# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNIQUE BARNETT, et al., | Case No.: 2:21-cv-00218-APG-VCF |
| Plaintiffs | **Order (1) Granting in Part Defendants' Motion for Summary Judgment and (2) Ordering Supplemental Briefing** |
| v. | |
| CLARK COUNTY SCHOOL DISTRICT, et al., | [ECF No. 69, 85] |
| Defendants | |

The plaintiffs are minor children who allege they were physically abused by former Clark County School District (CCSD) teacher Shane Butuyan while attending Thiriot Elementary School.  They sue CCSD, principal Sonya Holdsworth, assistant principal Renee Mechem, and special education aide Ana Escamilla.  They also sued Butuyan, but I dismissed the claims against him because the plaintiffs failed to timely serve him. ECF No. 37.

In brief, the plaintiffs are minors with various disabilities who were assigned to Butuyan's special education classroom at Thiriot.  Escamilla was an aide in the classroom. Butuyan allegedly used a ruler, which he referred to as "palo palo," to strike students' desks and chairs to get their attention.  He also allegedly touched, poked, or struck students with the ruler. The plaintiffs contend that Escamilla witnessed some of this conduct but did not report it, even though she is a mandatory reporter.  They also assert that Butuyan sometimes sent Escamilla out of the classroom for hours, leaving Butuyan alone with the children, at which point he sexually abused plaintiffs K.H. and A.K.

About a month into the school year, a classroom observer heard students in Butuyan's classroom mention "palo palo," which the observer knew was a Tagalog word for a stick for

striking.  She told Butuyan he should not be teaching the students Tagalog words and reported him to the school administration.  Holdsworth and Mechem investigated, and upon learning from the children that Butuyan struck them with the ruler, Holdsworth and Mechem contacted the police and suspended Butuyan.  Based on these allegations, the plaintiffs assert the following claims:

1.  a violation of their Fourth Amendment rights under 42 U.S.C. § 1983 to be free from excessive force against all defendants;

2.  discrimination under the Americans with Disabilities Act (ADA) against CCSD;

3.  violation of the Rehabilitation Act against CCSD;

4.  battery against Escamilla and CCSD;

5.  criminal violations motivated by the victim's characteristics under Nevada Revised Statutes (NRS) § 41.690 against Escamilla;

6.  intentional infliction of emotional distress against all defendants;

7.  negligence against all defendants;

8.  negligent supervision against Holdsworth, Mechem, and CCSD; and

9.  enhanced damages for injury to a vulnerable person under NRS § 41.1395 against Escamilla.

The defendants move for summary judgment on all claims on various grounds.  The plaintiffs concede summary judgment on two claims against Escamilla, but otherwise oppose.  The plaintiffs also move to strike exhibits attached to the defendants' reply.  I grant in part both motions.

/ / / /

/ / / /

# I.  MOTION TO STRIKE

The plaintiffs move to strike the declaration, charts, and deposition testimony attached to the defendants' reply brief.  The plaintiffs argue the defendants prepared the declaration and charts after the plaintiffs' response, so they had no opportunity to respond.  They also contend the charts evade the page limit on reply briefs.  The plaintiffs object to the deposition testimony because neither side cited to those pages of the transcripts in the motion or response.  The defendants respond that the exhibits are not new evidence and were provided in fair response to the plaintiffs' opposition brief.  The defendants also contend the charts are exhibits that should not count against the page limit.  Alternatively, they argue that if the charts are counted against the page limit, the proper remedy is to allow the plaintiffs leave to file a sur-reply rather than striking the charts.

I may strike documents that do not comply with the Local Rules or that constitute unauthorized supplemental briefs or evidence.  LR IC 7-1; LR 7-2(g).  Under Local Rule 7-3(a), a summary judgment reply brief is limited to 20 pages.  A party cannot put argument in an exhibit to evade this page limit.  The defendants contend that the charts are exhibits that should not count against the page limit, but the charts list the defendants' hearsay and relevancy objections and argue that the facts in the plaintiffs' response brief are not supported by the evidence the plaintiffs cite. *See* ECF Nos. 80-2; 80-3; 80-4.  Those arguments should have been in the reply brief.  I therefore grant the plaintiffs' motion to strike in that I will not consider those charts or the corresponding paragraphs in the declaration attached to the reply brief. *See* ECF No. 80-1.

However, I deny the motion to strike the deposition excerpt and the portion of the declaration authenticating it. ECF Nos. 80-1; 80-5.  The deposition testimony is a fair response to

1 the plaintiffs' arguments in the response brief and is a portion of the same deposition that the

2 plaintiffs relied on in their response. *Compare* ECF No. 73-32 at 2 *with* 80-5 at 2.

3 **II.  MOTION FOR SUMMARY JUDGMENT**

4        Summary judgment is appropriate if the movant shows "there is no genuine dispute as to

5 any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

6 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."

7 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence

8 is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

9        The party seeking summary judgment bears the initial burden of informing the court of

10 the basis for its motion and identifying those portions of the record that demonstrate the absence

11 of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The

12 burden then shifts to the non-moving party to set forth specific facts demonstrating there is a

13 genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th

14 Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a

15 genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and

16 reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of*

17 *Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

18        **A.  Section 1983**

19        To establish a § 1983 claim, the plaintiffs must show that "(1) the defendants acted under

20 color of law, and (2) their conduct deprived [the plaintiffs] of a constitutional right." *Stein v.*

21 *Ryan*, 662 F.3d 1114, 1118 (9th Cir. 2011) (quotation omitted).  The defendants do not dispute

22 that they acted under color of law.  Thus, the question is whether the defendants violated the

23 plaintiffs' constitutional rights.

The parties dispute the applicable constitutional right at issue and the corresponding legal standard to determine whether that right was violated with respect to the plaintiffs' allegations against Butuyan and Escamilla.  The defendants assert that the Fourteenth Amendment due process clause's shocks-the-conscience standard applies, while the plaintiffs argue that the Fourth Amendment's prohibition on unreasonable seizures governs.

Under Ninth Circuit law, allegations that a teacher or aide physically abused a student are governed by the Fourth Amendment. *Preschooler II v. Clark Cnty. Sch. Bd. of Tr.*, 479 F.3d 1175, 1178, 1180 (9th Cir. 2007) (analyzing a claim that a teacher slapped and slammed a student into a chair under the Fourth Amendment); *see also A.T. by & through L.T. v. Baldo*, 798 F. App'x 80, 83 (9th Cir. 2019) (stating that "students have a clearly established Fourth Amendment right to be free from arbitrary and excessive corporal punishment").  "[I]t may be possible for a school official to use excessive force against a student without seizing or searching the student" such that the claim might be more appropriately analyzed under the Fourteenth Amendment. *Doe ex rel. Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003).  But *Preschooler II* applied the Fourth Amendment to allegations of physical abuse like those at issue in this case.  The plaintiffs' claims therefore arise under the Fourth Amendment.

### 1.  Escamilla

The defendants contend that K.H. suffered no constitutional injury when Escamilla held his hand while escorting him to a bus.  The plaintiffs do not argue or point to evidence that Escamilla used excessive force on K.H. or any of the other plaintiffs.  Indeed, the plaintiffs have abandoned the battery claim against Escamilla. *See* ECF No. 73 at 29 n.6.  The plaintiffs do not

1  contend that she is subject to supervisory liability.  I therefore grant Escamilla's motion for

2  summary judgment on the § 1983 claim.[1]

3          2.  Butuyan

4          Although Butuyan is no longer a defendant in this action, the plaintiffs' claims against

5  Holdsworth, Mechem, and CCSD are based on their alleged failure to prevent his conduct.  I

6  therefore address whether Butuyan violated the plaintiffs' Fourth Amendment rights.

7          The defendants argue that even if Butuyan struck or poked the plaintiffs with a ruler, the

8  children suffered no injuries, so the use of force was not sufficiently serious.  The plaintiffs

9  respond that they have presented evidence of unreasonable force inflicted on children with

10  special needs who were subjected to physical abuse, and K.H. and A.K. were sexually abused.

11          Viewing the facts in the light most favorable to the plaintiffs, there is evidence that

12  Butuyan struck the plaintiffs on their hands, shoulders, and buttocks with a ruler; struck K.H. in

13  the crotch; and touched A.K.'s "balls."[2]  A reasonable jury could find that this conduct was an

14  unreasonable use of force, particularly considering the children's ages (eight or nine years old)

15  and their vulnerabilities as students in a special education classroom.[3]

16          The defendants contend that the children's statements to adults should not be credited

17  because their stories have changed and their stories are not consistent with each other's or with

18  the stories of the other students in the classroom.  But credibility is "a determination that is

19  exclusively within the province of the factfinder at trial, not the district court on summary

20

---

21  [1] The plaintiffs contend that Escamilla did not move for summary judgment on the § 1983 claim.
     ECF Nos. 73 at 20 n.3.  However, the defendants moved for summary judgment on the § 1983
22  claim for all of them and made arguments specific to Escamilla. ECF No. 69 at 13, 15 & n.9.

23  [2] *See, e.g.*, ECF Nos. 69-1 at 14, 22; 69-7 at 15-16; 69-10 at 19-21; 69-11 at 4-5; 71-1 at 2-7; 71-
     2 at 2-5; 71-3 at 3-6; 71-4 at 3-5; 71-9 at 4, 8; 74-13 at 56; 74-14 at 57; 74-15 at 48; 74-16 at 46.

     [3] *See, e.g.*, ECF Nos. 69-1 at 4, 8; 69-2 at 5; 69-7 at 4-5; 69-10 at 5, 11-12; 71-5; 71-6.

judgment." *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1035-36 (9th Cir. 2005). Additionally, the defendants object on hearsay grounds because the plaintiffs have not presented testimony or affidavits from the children themselves, instead providing evidence of what they told adults. However, at the summary judgment stage, I do not consider whether evidence has been presented in admissible form. Rather, the question is whether the evidence can be presented in admissible form at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Presumably, the children could testify at trial. I therefore overrule the defendants' hearsay objection at this stage.

### 3.  CCSD, Holdsworth, and Mechem

The defendants argue that even if Butuyan violated the plaintiffs' constitutional rights, there is no basis for supervisory liability for Holdsworth or Mechem because there is no evidence that they knew about Butuyan's conduct before it was first reported to them, and they immediately took action to remedy the situation once they learned of it. The defendants further argue that CCSD cannot be liable because no policy, custom, or practice was the moving force behind any constitutional violation.

The plaintiffs respond that Holdsworth and Mechem failed to train Butuyan and Escamilla, did not vet Butuyan before placing him in a special needs classroom, did not respond when they received information he was not properly doing his job, and did not respond when they learned that Butuyan was instructing Escamilla to leave the classroom for lengthy periods of time. The plaintiffs contend that CCSD is liable due to its practice of shuffling problem teachers to new schools and its practice of covering up teacher wrongdoing, which deprived the plaintiffs' parents of the ability to address the plaintiffs' harm.

1   There is no respondeat superior liability under § 1983. *Preschooler II*, 479 F.3d at 1182.

2 However, a supervisor may be liable under § 1983 "if there exists either (1) his or her personal

3 involvement in the constitutional deprivation, or (2) a sufficient causal connection between the

4 supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202,

5 1207 (9th Cir. 2011) (quotation omitted).  Thus, "a supervisor can be liable in [her] individual

6 capacity for [her] own culpable action or inaction in the training, supervision, or control of [her]

7 subordinates; for [her] acquiescence in the constitutional deprivation; or for conduct that showed

8 a reckless or callous indifference to the rights of others." *Id.* at 1208 (quotation omitted).

9   Like supervisors, governmental entities are not liable under § 1983 based on a respondeat

10 superior theory for the acts of their employees. *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175,

11 1185 (9th Cir. 2002).  Instead, a plaintiff has three means of holding liable a governmental entity

12 like CCSD.  "First, a local government may be held liable when implementation of its official

13 policies or established customs inflicts the constitutional injury." *Clouthier v. Cnty. of Contra*

14 *Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010) (quotation omitted).  "Second, under certain

15 circumstances, a local government may be held liable under § 1983 for acts of omission, when

16 such omissions amount to the local government's own official policy." *Id.* (quotation omitted).

17 This could include the failure to adequately train its employees, but a failure to train "must

18 amount to deliberate indifference to a constitutional right." *Id.*  Finally, "a local government may

19 be held liable under § 1983 when the individual who committed the constitutional tort was an

20 official with final policy-making authority or such an official ratified a subordinate's

21 unconstitutional decision or action and the basis for it." *Id.* at 1250 (quotation omitted).

22 / / / /

23 / / / /

8

1            *a.  Failure to Train*

2            The defendants contend that Butuyan and Escamilla were trained and their failure to

3    follow that training is not sufficient to show Holdsworth and Mechem failed to train them.  The

4    plaintiffs respond that Holdsworth and Mechem failed to train Escamilla and Butuyan on their

5    responsibilities in filling out a 624 Form, which is a form used to report the use of aversive

6    interventions[4] on disabled students.  The plaintiffs contend that if Escamilla and Butuyan had

7    been trained properly, they would have reported Butuyan's conduct earlier and thus would have

8    prevented at least some of the plaintiffs' injuries.

9            Failure to train may constitute a basis for supervisory and entity liability "where the

10   failure amounts to deliberate indifference to the rights of those who deal with municipal

11   employees." *Benavidez v. Cnty. Of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021); *Hyde v. City*

12   *of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022) (stating that for supervisory liability for failure to

13   train, "the plaintiff must show that the official was deliberately indifferent to the need to train

14   subordinates, and the lack of training actually caused the constitutional harm or deprivation of

15   rights" (quotation omitted)).  Mere negligence is insufficient. *Benavidez*, 993 F.3d at 1153.  To

16   establish a failure to train, the plaintiffs must present evidence "(1) of a constitutional violation;

17   (2) of a municipal training policy that amounts to a deliberate indifference to constitutional

18   rights; and (3) that the constitutional injury would not have resulted if the municipality properly

19   trained their employees." *Id.* at 1153-54; *see also Hyde*, 23 F.4th at 874 (stating that for

20   supervisory liability, the plaintiff must show that the supervisor "disregarded the known or

21

22

23   ───────────────────────

[4] An aversive intervention is an action that punishes a student with a disability for the purpose of
eliminating, reducing, or discouraging maladaptive behavior. *See* ECF No. 69-28.

1  obvious consequence that a particular omission in their training program would cause municipal

2  employees to violate citizens' constitutional rights" (simplified)).

3        There are two paths to show a deliberately indifferent failure to train.  First, the plaintiffs

4  may show that municipal officials adhered to "a deficient training program, intended to apply

5  over time to multiple employees," that the officials knew or should have known failed to prevent

6  its employees from committing constitutional torts. *Long v. Cnty. of Los Angeles*, 442 F.3d 1178,

7  1186 (9th Cir. 2006).  The "existence of a pattern of tortious conduct by inadequately trained

8  employees may tend to show that the lack of proper training, rather than a one-time negligent

9  administration of the program or factors peculiar to the [employee] involved in a particular

10  incident, is the 'moving force' behind the plaintiff's injury." *Id.* (quotation omitted).  However,

11  "that a particular [employee] may be unsatisfactorily trained will not alone suffice to fasten

12  liability on the [entity or supervisor], for the [employee's] shortcomings may have resulted from

13  factors other than a faulty training program." *City of Canton v. Harris*, 489 U.S. 378, 390-91

14  (1989); *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007) ("Because

15  Blankenhorn has limited his proof to the City's failure to train only Nguyen, he did not meet his

16  burden to withstand Defendants' motion for summary judgment.").

17        Alternatively, a plaintiff may show a failure to train by a single incident "where fault and

18  causation were clearly traceable to a municipality's legislative body or some other authorized

19  decisionmaker." *Benavidez*, 993 F.3d at 1154 (quotation omitted).  For example, if a "city has

20  armed its officers with firearms, the need to train officers in the constitutional limitations on the

21  use of deadly force can be said to be so obvious, that failure to do so could properly be

22  characterized as deliberate indifference to constitutional rights." *Id.* (simplified).

23

1    The plaintiffs' claims fail under either theory.  Butuyan and Escamilla were trained on
2 (among other things) sexual harassment, child abuse and neglect, and aversive interventions and
3 restraints. ECF Nos. 71-12; 71-14.  It is unclear what the plaintiffs claim is deficient about the
4 training program other than that neither Butuyan nor Escamilla filled out the proper form after
5 Butuyan used the ruler.  The Ninth Circuit has rejected this kind of circular reasoning that the
6 training must be deficient because an employee did not follow it. *See Hyde*, 23 F.4th at 874-75.
7 Additionally, Butuyan was the alleged perpetrator, and no amount of training would likely have
8 led him to fill out a form about his own conduct.

9    The only deficiency the plaintiffs suggest is that Escamilla's training should have been
10 conducted in Spanish because she requested an interpreter at her deposition. *See* ECF No. 73-32
11 at 4. However, there is no evidence that CCSD, Holdworth, or Mechem knew or should have
12 known that Escamilla needed to be trained in Spanish.  Escamilla filled out paperwork in
13 English. *See ECF Nos.* 71-8 at 2; 71-15 at 8-9.  During her deposition, Escamilla at least twice
14 answered in English, suggesting she understands and speaks English. *See* ECF Nos. 73-32 at 8;
15 80-5 at 6.  And when asked whether she requested training in Spanish, she testified that she
16 "never thought to do so." ECF No. 73-32 at 23.  She testified that she was trained on aversive
17 interventions at the beginning of each year, and she showed some knowledge on both aversive
18 interventions and the form required to report such interventions, although she also stated at times
19 that she did not remember specifics. ECF No. 80-5 at 3-6.  The plaintiffs thus have not raised a
20 genuine dispute that Escamilla was not trained on the relevant topics, that she needed to be
21 trained in Spanish, or that the defendants knew or should have known Escamilla needed to be
22 trained in Spanish and disregarded that need.  Having failed to present a genuine dispute that the
23 training program was deficient, the plaintiffs' failure-to-train claim fails.

1    Moreover, the plaintiffs have not shown a pattern over time to support a failure-to-train
2  claim that would suggest the training was deficient and that the defendants knew or should have
3  known it was deficient, or that there was some defect in the training that was so obvious a single
4  incident would support liability.  I therefore grant summary judgment to CCSD, Holdsworth, and
5  Mechem on the plaintiffs' failure-to-train claim.

6                                   *b.  Failure to Vet or Supervise Butuyan*

7    The defendants argue that there was no reason for Holdsworth, Mechem or CCSD to
8  know that Butuyan would become physically or sexually abusive because the only red flags were
9  about his skills as a teacher, not that he would physically abuse a student.  The plaintiffs respond
10  that Holdsworth and Mechem failed to vet or supervise Butuyan even though there were many
11  red flags that should have caused them to scrutinize his behavior.

12    "Only where adequate scrutiny of an applicant's background would lead a reasonable
13  policymaker to conclude that the plainly obvious consequence of the decision to hire the
14  applicant would be the deprivation of a third party's federally protected right can the official's
15  failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'"
16  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 411 (1997).  "The connection
17  between the background of the particular applicant and the specific constitutional violation
18  alleged must be strong." *Id.* at 412.  Thus, CCSD's decision to retain Butuyan after his year at a
19  prior school, and Holdsworth and Mechem's decisions to allow him to teach at Thiriot, were not
20  deliberately indifferent to the plaintiffs' rights unless, in light of Butuyan's record, his
21  misconduct "would have been a plainly obvious consequence" of the retention and supervision
22  decisions. *Id.* at 415.

23

Even viewing the facts in the light most favorable to the plaintiffs, there is no evidence that it was obvious from Butuyan's record that he would physically and sexually abuse students. Butuyan's record showed he had difficulties with teaching skills, such as failing to prepare lesson plans and failing to timely complete schedules. *See* ECF No. 73-3; 73-14 at 19-20; 73-20; 73-24 at 5; 74-4; 74-5; 74-6; 74-7; 74-8; 74-9. But the plaintiffs point to no evidence that would have hinted that Butuyan would be abusive. Their failure-to-vet claim thus fails.

As to their failure-to-supervise allegations, the evidence shows that Holdsworth and Mechem quickly noticed challenges Butuyan was having with his teaching skills. Because of these difficulties, within the first month of the school year, Mechem and one or more observers had been in Butuyan's classroom and helped him with tasks outside the classroom multiple times. *See, e.g.*, ECF Nos. 73-3; 73-4 at 11-20; 73-24 at 5, 24; 73-27; 74-8; 74-9; 74-17. Holdsworth and Mechem first learned about the phrase "palo palo" on September 11, 2019, when one of three classroom observers reported that she overheard the students calling a ruler "palo palo." ECF No. 74-12 at 4. The observer asked the students what that meant, and they responded that it meant "to hit and spank." *Id.* However, there is no evidence that on that date any student told the observers that Butuyan struck them with the ruler. The observer reported this information to Holdsworth and Mechem. *Id.* Another observer told Holdsworth and Mechem that Escamilla told her that after the observers left the classroom, Butuyan yelled at the students and told them that "palo palo" was their secret. *Id.* at 4-5. The observer reported Escamilla's statements to Mechem and Holdsworth. *Id.* at 4.

The next day, Mechem contacted CCSD's employee management relations (EMR) department, who advised Mechem to investigate. *Id.* at 20. During the early afternoon hours on September 13, Mechem learned from students that Butuyan was striking them with the ruler. *Id.*

13

at 17, 28-33.  Mechem and Holdsworth again contacted EMR, and then called school police at 2:30 p.m., and Child Protective Services (CPS) shortly thereafter. *Id.* at 17.  At approximately 3:00 p.m., EMR advised Holdsworth and Mechem to meet with Butuyan at the end of the school day to inform him that he was being placed on leave with pay pending an investigation, which they did at approximately 3:30 p.m. *Id.*  Holdworth and Mechem then called the students' parents and told them Butuyan was removed from the classroom pending an investigation. *Id.* at 17, 21.

Even viewing these facts in the light most favorable to the plaintiffs, no reasonable jury could find that the defendants were deliberately indifferent to the students' constitutional rights. The defendants did not learn about the ruler until September 11 and commenced an investigation.  They first learned in the early afternoon hours of September 13 that Butuyan actually struck the students, at which point they called the school police and CPS, and within a matter of hours put Butuyan on leave without pay pending further investigation.  To the extent the plaintiffs contend that the defendants should have pulled Butuyan from the classroom on September 11, the defendants did not know at that point that Butuyan was using the ruler to strike students.  The plaintiffs thus have not raised a genuine dispute that CCSD, Holdsworth, or Mechem were deliberately indifferent to the plaintiffs' constitutional rights by failing to adequately vet or supervise Butuyan.

### c. Custom or Practice of Covering Up

The defendants argue that even if the plaintiffs could show CCSD had a policy of failing to investigate or punish teacher misconduct, there is no evidence that custom was the moving force behind Butuyan's conduct.  They contend that Butuyan was trained on CCSD's official policies about aversive interventions and abuse, and there is no evidence that he acted because of an alleged custom of condoning abuse.  The plaintiffs respond that CCSD has a custom or

practice of covering up employees' lack of qualifications and avoiding reporting obligations to entities outside of CCSD. They contend that despite Butuyan's poor track record, CCSD did not retrain him and instead moved him to another school based on CCSD's practice of shuffling problem teachers to other schools. They also contend that CCSD's practice of covering up misconduct from outside review is shown by Holdsworth's statement on a recorded phone call that they would not tell anyone about these allegations.

There is no evidence that any alleged custom or practice of covering up teacher misconduct was the moving force behind Butuyan's misconduct. Although Butuyan was not formally reprimanded, he was advised of his deficiencies in his teaching skills, and other employees worked with him to improve. *See, e.g.*, ECF Nos. 73-3 at 2; 73-4 at 12; 73-20; 74-4; 74-5 at 7; 74-6; 74-8; 74-9; 74-10. As discussed previously, there were no indications that Butuyan would become abusive, so there is no basis to conclude that a failure to formally discipline him for deficiencies in teaching skills was the moving force behind his physically abusive conduct. The plaintiffs present no evidence of any other incidents where CCSD covered up teacher abuse or that Butuyan was aware of such instances so that he might have been emboldened to physically abuse students without fear of consequences.[5] The plaintiffs' claim therefore fails as a matter of law. *See Long*, 442 F.3d at 1190 ("For a policy to be the moving force behind the deprivation of a constitutional right, the identified deficiency in the policy must be closely related to the ultimate injury." (quotation omitted)).

---

[5] The plaintiffs' claim is problematic factually as well. As a matter of logic, any coverup in this case would have taken place after Butuyan's abusive conduct ceased and thus could not be the moving force behind Butuyan's behavior. Moreover, the defendants did report Butuyan's conduct to an outside entity, CPS, and called the students' caretakers to tell them Butuyan had been removed from the classroom pending an investigation, although the defendants did not tell parents that the children reported that Butuyan had hit them with a ruler. *See* ECF No. 69-15 at 7.

1         <u>4.  Summary</u>

2        The plaintiffs have presented evidence that Butuyan violated their Fourth Amendment

3 rights, but Butuyan is no longer a defendant in this action.  Even viewing the facts in the light

4 most favorable to the plaintiffs, they have not presented evidence that Escamilla, Holdsworth,

5 Mechem, or CCSD violated their Fourth Amendment rights.  I therefore grant the defendants'

6 motion for summary judgment on the plaintiffs' § 1983 claim.

7    **B.  ADA and Rehabilitation Act**

8        The plaintiffs' ADA and Rehabilitation claims are brought only against CCSD. ECF No.

9 44 at 28-32.  CCSD argues that these claims fail because the plaintiffs cannot show they were

10 denied educational benefits and, even if they were, there is no evidence that CCSD acted with the

11 requisite mental state.  The plaintiffs respond that there is evidence they were subject to physical

12 and sexual abuse and that Butuyan was not qualified to teach special needs students.  They also

13 argue they may meet the mental state requirement by showing deliberate indifference, which

14 they contend a reasonable jury could find on these facts.  Alternatively, they contend that a

15 reasonable jury could find Butuyan had the requisite mental state, and CCSD is vicariously liable

16 for Butuyan's acts.

17        "Title II of the ADA prohibits public entities from discriminating on the basis of

18 disability." *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 737 (9th Cir. 2021) (citing 42

19 U.S.C. § 12132).  Section 504 of the Rehabilitation Act "similarly prohibits disability

20 discrimination by recipients of federal funds." *Id.*  Courts interpret the two laws "coextensively

21

22

23

because there is no significant difference in the analysis of rights and obligations created by the two Acts." *Id.* (quotation omitted).[6]

To state a prima facie ADA claim under Title II, "a plaintiff must show: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Id.* (quotation omitted).  Section 504's prima facie elements "are similar, with the additional requirement that the plaintiff prove that the program receives federal financial assistance." *Id.* (quotation omitted).  To obtain damages under section 504 and Title II, a plaintiff must also prove intentional discrimination, either by showing discriminatory animus or deliberate indifference. *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016).  Deliberate indifference in this context means "knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." *Id.* (quotation omitted).  This is a high bar that requires the plaintiff to show that the public entity's response or lack thereof "was clearly unreasonable in light of the known circumstances." *Csutoras v. Paradise High Sch.*, 12 F.4th 960, 966 (9th Cir. 2021) (quotation omitted).

As discussed above in the context of the plaintiffs' § 1983 claim, the plaintiffs have not raised a genuine dispute that Holdsworth, Mechem, or CCSD were deliberately indifferent.  The plaintiffs have not argued or pointed to evidence that any of these defendants acted with discriminatory animus or that CCSD has an official policy that is discriminatory based on disability.  Consequently, the plaintiffs can prevail on these claims only if CCSD is vicariously

---

[6] Although there are some differences between the ADA and the Rehabilitation Act, the parties argue the claims together and do not contend that there is a material difference for this case.  I therefore do the same.

17

1    liable for Butuyan or Escamilla's conduct.  I therefore must determine whether CCSD can be

2    vicariously liable for the acts and mental state of lower-level employees like Butuyan and

3    Escamilla.

4           The plaintiffs rely on *Duvall v. County of Kitsap*, which held that "[w]hen a plaintiff

5    brings a direct suit under either the Rehabilitation Act or Title II of the ADA against a

6    municipality (including a county), the public entity is liable for the vicarious acts of its

7    employees." 260 F.3d 1124, 1141 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11,

8    2001).  Because *Duvall* is published Ninth Circuit authority, that would seem to end the matter.

9    However, *Duvall* did not address prior Supreme Court authority in *Gebser v. Lago Vista*

10   *Independent School District* that compels the conclusion that there is no vicarious liability for

11   money damages under Title II of the ADA and section 504 of the Rehabilitation Act. 524 U.S.

12   274, 290 (1998).  Additionally, other published Ninth Circuit authority that is consistent with

13   *Gebser* counsels against allowing vicarious liability.  The parties have not addressed these cases,

14   so I will allow supplemental briefs.  But I am inclined to grant CCSD summary judgment on

15   these claims because I must follow *Gebser* over *Duvall*.  I set forth my reasoning below to help

16   the parties understand why I reach this conclusion so that the supplemental briefs can address the

17   relevant law and the plaintiffs have a fair opportunity to persuade me otherwise.

18           Title II's remedy section states that the "remedies, procedures, and rights" under section

19   505 of the Rehabilitation Act apply to Title II claims. 42 U.S.C. § 12133.  Section 505 of the

20   Rehabilitation Act in turn states that the "remedies, procedures, and rights set forth" in Title VI

21   of the 1964 Civil Rights Act "shall be available" for violations of section 504 of the

22   Rehabilitation Act. 29 U.S.C. § 794a(a)(2).  "Thus, the remedies for violations of § 202 of the

23   ADA and § 504 of the Rehabilitation Act are coextensive with the remedies available in a private

cause of action brought under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., which prohibits racial discrimination in federally funded programs and activities." *Barnes v. Gorman*, 536 U.S. 181, 185 (2002).  Consequently, whether an entity can be vicariously liable for money damages under Title II of the ADA and Rehabilitation Act depends on whether such liability exists under Title VI. *See Ferguson v. City of Phoenix*, 157 F.3d 668, 673 (9th Cir. 1998), *as amended* (Oct. 8, 1998) ("By statute, the remedies for violations of the ADA and the Rehabilitation Act are co-extensive with each other . . . and are linked to Title VI of the Civil Rights Act of 1964 . . . .   These statutes require that ADA and Rehabilitation Act remedies be construed the same as remedies under Title VI." (internal citations omitted)).

The Ninth Circuit has held in a published opinion that an entity cannot be vicariously liable for money damages under Title VI. *United States v. County of Maricopa, Ariz.*, 889 F.3d 648, 652 (9th Cir. 2018).  Rather, the entity can be held liable "if an official with power to take corrective measures is 'deliberately indifferent to known acts' of discrimination" or for "acts of discrimination that result from its own 'official policy.'" *Id.* (quoting *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 641 (1999) and *Gebser*, 524 U.S. at 290).

The Ninth Circuit noted in *County of Maricopa* that "*Davis* and *Gebser* involved Title IX of the Education Amendments of 1972, but 'the [Supreme] Court has interpreted Title IX consistently with Title VI.'" *Id.* at 652 n.2 (quoting *Barnes*, 536 U.S. at 185).  That is because "Title IX was patterned after Title VI of the Civil Rights Act of 1964." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 694 (1979).  Consequently, Title IX caselaw informs the remedies available under Title VI and vice versa, and that in turn governs the remedies available under Title II of the ADA and section 504 of the Rehabilitation Act.

In *Gebser*, the Supreme Court held that "in cases like this one that do not involve official policy of the recipient entity, . . . a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [entity's] behalf has actual knowledge of discrimination . . . and fails adequately to respond."[7] 524 U.S. at 290.  And because there is no vicarious liability under Title IX, the same is true for Title VI, Title II of the ADA, and section 504 of the Rehabilitation Act.

*Gebser* pre-dated *Duvall*, but *Duvall* does not mention it or explain why it does not control the question.  And while *County of Maricopa* post-dated *Duvall*, it does not mention *Duvall*.  Published Ninth Circuit authority on the question of vicarious liability under these interconnected statutes thus appears to be inconsistent, and *Duvall* is inconsistent with *Gebser*. Regardless of the apparent conflict in Ninth Circuit law, I must follow the Supreme Court, and under *Gebser* there is no vicarious liability for money damages under Title IX, so there is no vicarious liability under Title II of the ADA and section 504 of the Rehabilitation Act either. Accordingly, I intend to grant CCSD summary judgment on these claims unless the plaintiffs' supplemental brief persuades me otherwise.

### C.  Battery

The plaintiffs brought this claim against Butuyan, Escamilla, and CCSD. ECF No. 44 at 32.  The plaintiffs do not oppose summary judgment being granted in Escamilla's favor on this claim. ECF No. 73 at 29 n.6.  I therefore grant Escamilla summary judgment on this claim. However, CCSD did not move for summary judgment on this claim and has not disputed that it

---

[7] As discussed previously with respect to the § 1983 claim and below with respect to the negligent supervision claim, no reasonable jury could find that Holdsworth and Mechem failed to adequately respond once they learned of the abuse.

1  can be vicariously liable for Butuyan's conduct on a state law tort claim. This claim remains

2  pending against CCSD.

3      **D.  NRS § 41.690**

4      The plaintiffs brought this claim against Butuyan and Escamilla (but not CCSD). ECF

5  No. 44 at 33. The plaintiffs do not oppose summary judgment being granted in Escamilla's

6  favor. ECF No. 73 at 29 n.6. I therefore grant Escamilla summary judgment on this claim.

7      **E.  Intentional Infliction of Emotional Distress (IIED)**

8      The plaintiffs brought this claim against Butuyan, Escamilla, Holdsworth, Mechem, and

9  CCSD. ECF No. 44 at 33. The defendants argue that Escamilla's conduct was not outrageous as

10  to K.H. when she held his hand while escorting him to the bus[8] and there is no evidence she did

11  anything physically abusive to the other three plaintiffs. They also argue that Holdsworth and

12  Mechem did not act outrageously because they responded to the abuse allegations once they

13  learned of the situation. CCSD contends that because none of these employees' conduct was

14  outrageous, it cannot be held vicariously liable for their conduct. CCSD argues that although it

15  can be held vicariously liable for Butuyan's conduct, his conduct also was not extreme and

16  outrageous because none of the plaintiffs suffered a physical injury.

17      The plaintiffs respond that a reasonable jury could find Butuyan's conduct extreme and

18  outrageous, and that Escamilla, Holdsworth, and Mechem's conduct was outrageous because

19  Escamilla did not report Butuyan even though she is a mandatory reporter and Holdsworth and

20  Mechem tried to conceal Butuyan's conduct. In reply, the defendants argue that the amended

21

22

---

23  [8] The plaintiffs had alleged that Escamilla roughly handled K.H. on one occasion unrelated to the abuse in Butuyan's classroom. *See* ECF No. 44 at 6. The plaintiffs have abandoned this allegation at summary judgment.

complaint alleged that Escamilla was liable on this claim for her own abusive acts, not her failure

to report, and the plaintiffs cannot change their theory of liability at summary judgment.

The elements of IIED are: "(1) extreme and outrageous conduct with either the intention

of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe

or extreme emotional distress," and (3) causation. *Dillard Dep't Stores, Inc. v. Beckwith*, 989

P.2d 882, 886 (Nev. 1999) (en banc) (quotation omitted).  Outrageous conduct is behavior that

goes "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized

community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted).

"The Court determines whether the defendant's conduct may be regarded as extreme and

outrageous so as to permit recovery, but, where reasonable people may differ, the jury

determines whether the conduct was extreme and outrageous enough to result in liability."

*Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009).  "Liability for emotional

distress will not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or

other trivialities.'" *Candelore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir. 1992)

(quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

A reasonable jury could find that Butuyan striking 8- and 9-year-old disabled students

with a ruler, striking K.H. in the crotch, and sexually molesting A.K. is extreme and outrageous

conduct.  CCSD admits it could be liable for Butuyan's conduct for this tort.  ECF No. 69 at 21-

22.  Consequently, I deny CCSD's motion for summary judgment on this claim.[9]

---

[9] I decline to consider the defendants' argument raised for the first time in reply that none of the
plaintiffs have sought physical or mental health treatment for the alleged emotional distress. *See*
ECF No. 80 at 15; *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need
not consider arguments raised for the first time in a reply brief.").

As for Escamilla, the amended complaint did not give Escamilla or CCSD fair notice that the IIED claim against her was based on a failure to intervene or report Butuyan's misconduct. Rather, the amended complaint alleged that Escamilla was liable because she subjected the plaintiffs to "physical, verbal and psychological abuse" and that she committed "violent acts" against them. ECF No. 44 at 34. Although the amended complaint elsewhere alleges Escamilla failed to intervene or report Butuyan, that is not the basis of the IIED claim as alleged in the amended complaint. Had the plaintiffs wanted to rely on her failure to intervene or report, they could and should have pleaded those facts in the IIED claim to give Escamilla and CCSD fair notice that this was the basis of the IIED claim against her as they did elsewhere in the amended complaint. The plaintiffs cannot change the factual basis of their claim at summary judgment. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006). There is no evidence that Escamilla physically abused any of the plaintiffs. I therefore grant the motion as to CCSD and Escamilla on the IIED claim.

I also grant summary judgment in favor of Holdsworth and Mechem because no reasonable jury could find their conduct was extreme and outrageous. As discussed above, upon learning about "palo palo," they promptly investigated, and within hours of learning that Butuyan was striking students, they called CCSD police and CPS, removed Butuyan from the school, and informed parents that Butuyan was sent home pending an investigation by school police.

## F. Negligence

The plaintiffs brought this claim against Butuyan, Escamilla, Holdsworth, Mechem, and CCSD. The defendants again argue that none of them engaged in misconduct. They also contend that CCSD adequately trained Escamilla on mandatory reporting requirements and, in

1   any event, no one saw abuse until September 13, 2019, so any failure to train on mandatory

2   reporting (and any resulting failure to report) could not have caused the plaintiffs' injuries.  The

3   plaintiffs respond that there is evidence that Escamilla was not properly trained and, had the

4   other defendants trained her, she may have reported Butuyan sooner and prevented some of the

5   abuse.  In reply, the defendants again argue that the claim against Escamilla was based on her

6   own alleged abusive conduct, not on her failure to report Butuyan.

7          To prevail on a negligence claim, the plaintiff must show that (1) the defendants owed

8   them a duty of care, (2) the defendants breached that duty, (3) the breach caused the plaintiffs'

9   injuries, and (4) the plaintiffs suffered damages as a result. *Foster v. Costco Wholesale Corp.*,

10  291 P.3d 150, 153 (Nev. 2012).  "[W]hether a defendant was negligent is generally a question of

11  fact for the jury to resolve," but "summary judgment is proper when the plaintiff cannot recover

12  as a matter of law." *Id.*

13         A reasonable jury could find Butuyan owed a duty not to physically strike or sexually

14  assault disabled students in his classroom, that he did so, and that the plaintiffs were damaged as

15  a result.  I therefore deny the motion as to CCSD based on Butuyan's negligence.

16         To the extent that the negligence claim against Escamilla is based on her allegedly

17  abusing the plaintiffs, that claim fails because there is no evidence that Escamilla abused the

18  plaintiffs.  However, unlike the IIED claim, the negligence claim alleges that each of the

19  defendants was negligent "by failing to prevent harm" to the plaintiffs, failing to report the

20  abuse, and failing to inform the plaintiffs' parents when they learned of it. ECF No. 44 at 36.

21  Escamilla owed a duty to report abusive behavior because she was a mandatory reporter of child

22  abuse under Nevada law. *See* Nev. Rev. Stat. § 432B.220(1), (4)(e).  That means she must report

23  "the abuse or neglect of the child to an agency which provides child welfare services or to a law

24

enforcement agency." *Id.* § (1)(a).  Viewing the facts in the light most favorable to the plaintiffs, a reasonable jury could find that she breached that duty because some of the students testified that she witnessed some of Butuyan's abusive acts. *See* ECF No. 74-12 at 46, 49.  There is no evidence that she reported him for touching or striking students with the ruler.  A reasonable jury could find that the plaintiffs were damaged as a result because Butuyan was able to continue abusing them.  I therefore deny the motion as to Escamilla and CCSD based on Escamilla's negligence.

As to Holdsworth and Mechem, the negligence claim fails against them to the extent it is based on failing to prevent harm, failing to report the abuse, or failing to train Escamilla on being a mandatory reporter.  Even viewing the facts in the light most favorable to the plaintiffs, no reasonable jury could find that Holdsworth and Mechem failed to prevent the abuse because they reacted promptly upon learning that Butuyan was striking the students, or that they failed to report because they immediately called CCSD police and CPS.  Additionally, the evidence shows that Escamilla was trained on her duties as a mandatory reporter. ECF Nos. 69-32; 71-12; 71-14.  I therefore grant summary judgment on these aspects of the negligence claim against Holdsworth, Mechem, and CCSD.

However, the defendants' motion does not address the amended complaint's allegation that Holdsworth and Mechem negligently failed to inform the plaintiffs' caretakers that the plaintiffs were stating that Butuyan had struck them with a ruler.  Although there is evidence that Holdsworth and Mechem called the parents to tell them Butuyan was removed from the classroom, they apparently did not tell parents or caretakers that their child was stating that he or she was struck. ECF Nos. 69-15 at 7; 69-10 at 17-20 (K.G.'s parent testifying that she did not

1  understand that K.G. had been abused because she thought it was another student who had been

2  struck).  The parties may address this claim in their supplemental briefs.

3  ### G. Negligent Supervision

4       The plaintiffs brought this claim against Holdsworth, Mechem, and CCSD. ECF No. 44

5  at 37.  The defendants argue there is no evidence that they failed to supervise Butuyan because as

6  soon as they learned of the alleged abuse, they acted promptly by investigating and removing

7  Butuyan from the classroom.  The plaintiffs respond that there were numerous red flags

8  regarding Butuyan, including Holdsworth and Mechem's knowledge that Escamilla was out of

9  the classroom longer than usual, but they did not promptly address the problems.

10      Under Nevada law, an "employer has a duty to use reasonable care in the training,

11  supervision, and retention of his or her employees to make sure that the employees are fit for

12  their positions." *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996).  To establish a negligent

13  supervision claim, a plaintiff must show (1) the defendant owed a duty of care to the plaintiff;

14  (2) the defendant breached that by failing to supervise the employee "even though defendant

15  knew, or should have known, of the employee's dangerous propensities;" (3) the breach caused

16  the plaintiff's injuries; and (4) damages. *Freeman Expositions, LLC v. Eighth Jud. Dist. Ct. in &*

17  *for Cnty. of Clark*, 520 P.3d 803, 811 (Nev. 2022) (en banc).  The claim "contemplates liability

18  for an employer based on injuries caused by a negligently managed employee." *Id.* at 812.

19      Even viewing the facts in the light most favorable to the plaintiffs, no reasonable jury

20  could find that Holdsworth, Mechem, and CCSD negligently failed to supervise Butuyan.  The

21  defendants quickly noticed challenges Butuyan was having with his teaching skills at the

22  beginning of the school year, and Mechem and one or more of the observers had been in his

23  classroom and helped him with tasks outside the classroom multiple times in the first month of

1  the school year. *See, e.g.*, ECF Nos. 73-3; 73-4 at 11-20; 73-24 at 5, 24; 73-27; 74-8; 74-9; 74-

2  17.  Indeed, the reason the three classroom observers were in the classroom the day they

3  overheard students saying "palo palo" was because Holdsworth and Mechem requested their

4  assistance in Butuyan's classroom. ECF No. 74-12 at 16.  As discussed previously, nothing in

5  Butuyan's record would have suggested that closer supervision was needed to prevent physical

6  or sexual abuse.  I therefore grant summary judgment in favor of Holdsworth, Mechem, and

7  CCSD on this claim.

8           **H.  Enhanced Damages**

9           The plaintiffs bring this claim against Butuyan and Escamilla. ECF No. 44 at 38.

10  Escamilla argues that this claim fails because she did not act tortiously toward K.H. and K.H.

11  suffered no personal injury as a result of their interactions.  She also contends that there is no

12  evidence that she injured any of the other plaintiffs.  The plaintiffs respond that the statute allows

13  for enhanced damages for neglect of a vulnerable person, and Escamilla neglected the plaintiffs

14  by failing to report Butuyan's misconduct.  In reply, Escamilla argues that the amended

15  complaint alleged that this claim was based on violent acts she committed against the plaintiffs,

16  not neglect.  Escamilla contends the plaintiffs cannot change their theory of liability at summary

17  judgment.  Alternatively, Escamilla asserts that the statutory definition of neglect does not apply

18  to her conduct in this situation.

19           NRS § 41.1395(1) allows for double damages against a person who causes personal

20  injury to a vulnerable person through "abuse or neglect."  It also allows for the recovery of

21  attorney's fees and costs if the defendant "acted with recklessness, oppression, fraud or malice."

22  *Id.* § 41.1395(2).

23

The amended complaint alleges that Escamilla is subject to enhanced damages because she committed "violent acts" against the plaintiffs. ECF No. 44 at 38.  However, the plaintiffs do not point to evidence and do not argue that Escamilla abused any of them.  The amended complaint does not allege that Escamilla is liable for enhanced damages because she neglected them, so it did not give Escamilla fair notice that the enhanced damages were being asserted against her based on a neglect theory.  Consequently, I grant summary judgment in Escamilla's favor on this claim.

**III.  CONCLUSION**

I THEREFORE ORDER that the plaintiffs' motion to strike (ECF No. 85) is GRANTED in part, as set forth above.

I FURTHER ORDER that the defendants' motion for summary judgment (ECF No. 69) is GRANTED in part.  The following claims remain pending, subject to supplemental briefing on two claims:

1. ADA and Rehabilitation Act against Clark County School District;

2. Battery against Clark County School District based on Shane Butuyan's conduct;

3. Intentional infliction of emotional distress against Clark County School District based on Shane Butuyan's conduct; and

4. Negligence against Ana Escamilla; Sonya Holdsworth and Renee Mechem based on their failure to inform parents; and Clark County School District based on its employees' conduct.

I FURTHER ORDER that the parties may file supplemental briefs of no more than 10 pages addressing (1) whether defendant Clark County School District can be vicariously liable under Title II of the Americans with Disabilities Act and section 504 of the Rehabilitation Act

28

and (2) whether a genuine issue remains regarding the plaintiffs' negligence claim against defendants Sonya Holdsworth, Renee Mechem, and Clark County School District based on Holdsworth and Mechem failing to inform parents.  The plaintiffs shall file the opening brief on the first issue and the defendants shall file the opening brief on the second issue.  Opening briefs are due September 29, 2023.  Response briefs are due October 13, 2023.  No reply briefs will be filed without further order of the court.

DATED this 14th day of September, 2023.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE